# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.M.**

**No. 25-341** (Wood County CC-54-2024-JA-255)

## MEMORANDUM DECISION

Petitioner Father D.M.[1] appeals the Circuit Court of Wood County's May 15, 2025, order terminating his parental rights to M.M., arguing that the DHS failed to establish paternity and the evidence was insufficient to support termination.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In November 2024, the DHS filed a petition alleging that the petitioner abused and neglected the child by engaging in domestic violence with the child's mother in the child's presence. As a result of prior abuse and neglect proceedings, the mother had already relinquished her parental rights to M.M. and the petitioner took custody of the child at the conclusion of those proceedings. Despite this, the petitioner admitted to an investigating DHS worker that he and the child still lived with the mother. The petitioner admitted to punching and shattering a glass window "out of frustration" at being left alone with the child and that he and the mother had subsequently gotten into a fight that resulted in his arrest. The petitioner's arrest left the child in the care of the mother, which was prohibited due to the mother's prior voluntary relinquishment of her parental rights and thus constituted abuse or neglect of the child. The DHS further alleged that there was no food in the home and it could not determine if the child had been fed or was receiving appropriate medical care.

In December 2024, the court held an adjudicatory hearing at which the petitioner moved for a continuance and paternity testing. The court granted his motions and ordered that he drug screen immediately after the hearing. The DHS informed the court that the petitioner was listed as the child's father on the birth certificate.[3] Though his motion was granted, the petitioner never

---

[1] The petitioner appears by counsel Eric K. Powell. The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Keith White appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] While the petitioner opted not to include information from the prior proceeding where the mother's parental rights were terminated, it appears that he did not contest paternity then and that he took custody of the child at the conclusion of that proceeding.

submitted to a paternity test. In January 2025, the court reconvened the adjudicatory hearing, but the petitioner failed to appear despite his counsel's multiple attempts to contact him.[4] Two law enforcement officers testified to their investigation of the domestic violence incident alleged in the petition. Based upon the petitioner's failure to appear at the hearing and his nonparticipation in eight drug screens, the court granted the DHS's motion to cease visits and continued the adjudicatory hearing.

In February 2025, the court held the final adjudicatory hearing; the petitioner was again absent but was represented by counsel. A Child Protective Services ("CPS") worker testified that the petitioner was the child's father, to which there was no objection. The worker explained that the mother's parental rights were terminated in a prior proceeding. The worker described her investigation of the petitioner's apartment, where she observed a window covered with cardboard and shattered glass littering the surrounding area. The worker testified that she then met with the petitioner at a nearby restaurant and he indicated that he had just been released from jail. The worker noted that the petitioner had bandages on his hands, various scrapes and cuts, and ragged clothing spotted with blood. The worker recounted that the petitioner admitted that he got into a fight with the mother the previous evening and broke a window in the apartment. In the resulting adjudicatory order, the court found that the petitioner "allowed the mother to live with the child and be a caretaker for the child, knowing that she should not be caretaking," and that both the petitioner and the mother had "clear injuries . . . from domestic violence and the child was present while the domestic violence was occurring." Based upon these findings, the court concluded that the petitioner abused and neglected the child.

In March 2025, the court held a dispositional hearing at which the petitioner again did not appear but was represented by counsel. The court admitted a DHS report and a Court Appointed Special Advocate ("CASA") report into evidence and took notice of the entire case file, all without objection. The petitioner's counsel indicated that he had no evidence to present and that the petitioner was unresponsive to his attempts at communication by phone and mail. In the resulting dispositional order, the court found that the petitioner "show[ed] no interest in this case and has not participated in any services," failed to contact the DHS or check on the child's whereabouts, and failed to appear at the last three hearings. Based upon these findings, the court determined that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future, that the child needed continuity of care and caretakers, and that a significant amount of time was required to integrate the child into a stable and permanent home. Accordingly, the court terminated the petitioner's parental rights.[5] It is from this order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that

---

[4] The petitioner was represented by counsel at this hearing.

[5] As noted above, the mother previously voluntarily relinquished her parental rights. The permanency plan for the child is adoption in the current placement.

the DHS failed to prove that he was the child's parent, rendering termination of his parental rights erroneous. However, the DHS presented witness testimony that the petitioner was the child's parent. *See* W. Va. Code § 49-1-204 (defining a parent as "an individual defined as a parent by law or on the basis of a biological relationship, marriage to a person with a biological relationship, legal adoption or other recognized grounds"). At adjudication, a CPS worker testified that the petitioner was the child's parent, and the petitioner introduced no contrary evidence, nor did he appear to testify at the adjudicatory hearing. Moreover, the petitioner moved for and was granted a paternity test but failed to submit to that testing, squandering his opportunity to obtain rebuttal evidence. In fact, the petitioner was completely absent from the proceedings after the December 2024 adjudicatory hearing where the court ordered him to submit to that paternity test. Thus, the only evidence presented to the court indicated that the petitioner was the child's parent and, having been presented with no evidence to the contrary, the circuit court did not err in relying upon the same. *See In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 1, in part (holding that the circuit court's findings "shall not be set aside by a reviewing court unless clearly erroneous").

The petitioner also argues that termination of his parental rights was erroneous because the circuit court failed to hold a sufficient dispositional hearing. The petitioner asserts that the court did not hear any witness testimony and therefore did not hold a contested evidentiary hearing as required by Rule 35 of the Rules of Procedure for Child Abuse and Neglect Proceedings. However, the court held a hearing at which DHS and CASA reports were admitted into evidence without objection, complying with our explicit direction that "a circuit court is required to conduct a dispositional hearing prior to entering the dispositional order." *In re C.E.*, 251 W. Va 342, 348, 913 S.E.2d 366, 372 (2025). To support his argument, the petitioner complains that he was unable to cross-examine the authors of the reports that were admitted into evidence at disposition. This argument is unavailing. The petitioner did not object to the admission of the report itself and the petitioner was not precluded from calling witnesses, including the authors of the reports. As such, the petitioner was afforded a "meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses," but chose not to exercise those rights. W. Va. Code § 49-4-601(h). Based upon the evidence, the court found that the petitioner "show[ed] no interest in this case and has not participated in any services," failed to contact the DHS or check on the child's whereabouts, and failed to appear at the last three hearings. As a result, the court determined that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that the child's need for continuity of care and caretakers necessitated termination—findings that the petitioner does not challenge and upon which circuit courts may terminate parental rights. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (explaining that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected); W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and[] when necessary for the welfare of the child"). Accordingly, the petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 15, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: June 1, 2026


**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III